1

2                                    *E-FILED:  March 9, 2012*

3

4

5

6

7                              NOT FOR CITATION

8                  IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11   JANET L. SAVAGE,                     No. C10-04216 HRL

12          Plaintiff,                    **ORDER THAT CASE BE REASSIGNED
                                          TO A DISTRICT JUDGE**
13      v.

14   MTF RELOCATION, INC. dba BEST LOCAL  **REPORT AND RECOMMENDATION RE
     RELOCATION, dba BEST WEEK            PLAINTIFF'S MOTION FOR DEFAULT
     RELOCATION, dba ADVANCED             JUDGMENT**
15   RELOCATION dba ASAP RELOCATION, dba
     MTF RELOCATION MOVING AND            **[Re:  Docket No. 30]**
16   STORAGE,

17          Defendants.

18   _____/

19          This lawsuit arises from pro se plaintiff Janet Savage's 2009 relocation from California

20   to Oklahoma.  In sum, Savage says that defendant MTF Relocation, Inc. (MTF) and several

21   individuals—doing business as various companies, including Best Local Relocation—engage in

22   a "bait-and-switch" scheme to defraud customers of their money and property.  According to

23   plaintiff, defendant lures unsuspecting customers with low price quotes.  Then, after packing up

24   the customer's belongings, plaintiff says that defendant illegally inflates the original price

25   estimate and then keeps (and sells) the customer's possessions when they do not or cannot pay

26   the additional sums demanded.  Additionally, Savage claims that defendant engages in "weight

27   bumping," i.e., recording an inflated weight when weighing customers' belongings for purposes

28   of extracting additional fees.  Savage sues for alleged violations of the Carmack Amendment

**United States District Court**
For the Northern District of California

(49 U.S.C. § 14704), violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. §§1961-1968), and fraud.

Now before the court is plaintiff's motion for entry of default judgment. Because not all parties have consented to the undersigned's jurisdiction, the Clerk of the Court is ordered to reassign this case to a District Judge, along with the following report and recommendation for entry of default judgment.

BACKGROUND

According to the complaint, on September 30, 2009 Savage requested a quote from MTF, through the internet, for a small two-bedroom move (up to 4500 lbs). That same day, a Brian Feldmier responded via email on behalf of Best Local Relocation with a quote of $1,050.00 based on an estimated weight of 2100 lbs. (Complaint, Ex. 1). According to Feldmier's email, the quoted price included, among other things, full service door-to-door pick up and delivery; the labor of loading and unloading; free blanket wrapping to protect furniture; and all taxes. (Id.). The email stated that "long distance moves are subject to a 9% fuel surcharge" and that extra charges would be made for packing materials and boxes. (Id. at 2). Nevertheless, the quote given to Savage indicated that there would be no fuel surcharge. (Id. at 1). Additionally, the email indicates that Savage requested notification of the actual weight of her belongings and charges, noting that "Customer [sic] Have the Right to observe the weighting of the shipment." (Id. at 1).

The next day, Savage sent an email to Feldmier, requesting further information about the quoted price. Specifically, she stated that she did not need any packing materials because she would be packing her belongings herself. Plaintiff also asked whether the $1,050.00 quote was "firm" or whether "there is a chance that it will fluctuate." (Complaint, Ex. 2). Feldmier replied that the quote was "firm." (Id.). Explaining that additional pricing for packing materials was only "per customer request," he further stated that there would be no such additional charges, as long as plaintiff packed her own things and used her own materials. (Id.).

Satisfied with the quoted price and reassured by statements on defendant's websites that it was a member of the American Moving Storage Association and the California Moving &

**United States District Court**
For the Northern District of California

1   Storage Association, Savage decided to have MTF handle her move to Oklahoma.  She says that

2   she later learned that defendant was actually not a member of either association.

3         Prior to the move, and as required by defendant, plaintiff made an advance payment of

4   $892.50—i.e., a $157.50 deposit, plus an additional $735.00 (70% of the estimated charge).

5   (Complaint ¶ 17 and Exs. 1, 4 and 5).

6         On October 8, 2009, Best Local Relocation arrived to load her belongings onto the

7   moving truck.  Nevertheless, Savage says that the forms she was given to sign that day listed

8   MTF Relocation, Inc. at the top.  (Complaint ¶ 11, Ex. 3).  Additionally, she claims that

9   defendant has a practice of providing its customers with incomplete or blank forms—e.g.,

10   inventory forms, packing material order forms, revised written estimates, and bills of

11   lading—which customers are told will be filled out at a later time, but which they are

12   nonetheless required to sign after their items are loaded onto the moving truck.  (Complaint ¶

13   22).

14         It was only after the movers loaded her belongings onto the truck that Savage says she

15   was told that she had to pay several thousand dollars over the original quoted price.  For

16   example, when the movers arrived, Savage says that they began padding her possessions and

17   wrapping them in plastic.  When she questioned the need for the additional packing materials,

18   the movers reportedly told her that it was required for interstate moves, but did not mention that

19   additional charges would be made.  Plaintiff says that because no additional charges were

20   mentioned, she believed that the packing materials were included in the original $1,050.00

21   price.  Once her belongings were loaded, however, Savage says that she was told she would be

22   required to pay over $1,000 for the packing and wrapping of her things.  Specifically, the

23   shipping order she received noted the original $1,050 quoted price, plus an additional $1,170.66

24   for "Containers, Packing & Unpacking," as well as a $94.50 fuel surcharge.  (Complaint, Ex. 4).

25   When Savage questioned the additional charges, the movers told her to contact Best Local

26   Relocation about her pricing concerns.  Then, they drove off with her possessions.

27         When Savage called Feldmier at Best Local Relocation, he reportedly told her that the

28   price should have been $1,050.00 as originally quoted and that he would contact her after he

1   spoke to his supervisor about the matter. (Complaint ¶ 16). However, Savage says that she

2   never heard from Feldmier again. (Id.).

3       At some point after MTF took possession of and stored her belongings, Savage says that

4   she contacted MTF and was told that there was a significant increase in the price for her move

5   due to the weight of her possessions. (Complaint ¶ 49). Plaintiff claims, however, that

6   defendants did not provide notice of when and where the items would be weighed. (Id. ¶ 24).

7   She asserts that defendants routinely (and falsely) inflate shipment weights, e.g., by including

8   the moving tools and supplies in the weight of customers' goods, in order to further increase

9   charges. (Id.).

10      Matters got worse. Plaintiff says that after repeated attempts to contact Best Local

11  Relocation, she received a voicemail message on October 18, 2009 from someone named

12  Kamryn Duque. Duque told her that she needed to wire an additional $1,500 to Best Local

13  Relocation before the truck with her possessions would leave California—and that an additional

14  $1,126.17 would be due upon delivery of her items. (Complaint ¶ 17). Meanwhile, Best Local

15  Relocation refused to deliver her belongings until the additional payments were made—and it

16  also began charging plaintiff $410.40 per month in storage fees. (Id. ¶ 18).

17      On the evening of November 30, 2009, plaintiff says that she received an email from

18  one Eric Cohen, who identified himself as "Kamryn['s] boss." (Complaint, Ex. 6). Cohen

19  offered to deliver plaintiff's possessions if she paid a "discount" rate of $1,965.67 upon

20  delivery. (Id.). The email stated that the offer was good for only five days. Moreover, Savage

21  was advised that she would also have to pay several hundred dollars in storage fees for the

22  months of November and December—or else her possessions would be auctioned. (Id.). The

23  attached invoice indicated that the actual weight of Savage's possessions was 3420 lbs and that

24  the additional charges being demanded included, among other things, $990.00 for the 1320 lbs.

25  over the original 2100-lb estimate, plus an increased fuel surcharge of $183.60, a packing

26  materials charge of $1,071.00, and a materials sales tax of $99.07. (Id.).

27      Then, on January 11, 2010, Savage says she received a letter, by certified mail, from

28  MTF Relocation Moving & Storage, demanding payment of $2,379.98 for "Storage, rental,

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1   insurance, interest, packing, transportation, and lien charges as applicable." (Complaint, Ex. 7).

2   The letter went on to state that if payment was not made within ten days, her belongings would

3   be sold at auction on February 20, 2010. (<u>Id.</u>). Savage says that she attempted to pay MTF the

4   balance of the original $1,050.00, but that MTF refused to release her property unless the

5   increased charges were paid. (<u>Id.</u> ¶ 51).

6        Plaintiff says that she never received her property, which included (among other things)

7   a queen-sized bed set, dresser, sofa, and other household furniture; a refrigerator; washer/dryer

8   appliances; a television; dishes and small kitchen appliances; an heirloom lamp and family

9   Bible; her entire business wardrobe, shoes, and purses; home office supplies; and various

10  sentimental objects, including art made by her son and memorabilia that belonged to deceased

11  family members. (Complaint, Ex. 8).

12       This lawsuit followed.

13       Plaintiff was permitted to proceed *in forma pauperis*, and the U.S. Marshal was directed

14  to effect service upon defendant. Initial service attempts were unsuccessful, however, because

15  the business was "unknown" at the address plaintiff had for defendant. (Dkt. No. 6). Several

16  weeks later, summons was reissued with a different address in Santa Clara, California that

17  plaintiff says she obtained from the business record on file with the California Secretary of

18  State. Meanwhile, plaintiff moved for an order permitting her to serve MTF by publication.

19  That motion was denied without prejudice while service at the second address was attempted.

20  And, as it turns out, MTF was served there. (Dkt. No. 17). MTF never responded to the

21  complaint, and it has never made any appearance (formal or informal) in this matter. At

22  plaintiff's request, the Clerk of the Court entered MTF's default. (Dkt. No. 23).

23       Plaintiff now moves for entry of default judgment. Specifically, she seeks a judgment of

24  $36,252.50 in damages, which she says represents the trebled value of her possessions, 18

25  U.S.C. § 1964(c), plus her $892.50 advance payment. Pursuant to this court's order, plaintiff

26  submitted additional documents in support of her motion. The matter is deemed suitable for

27  determination without oral argument. CIV. L.R. 7-1(b). For the reasons stated below, this court

28  recommends that plaintiff's motion for default judgment be granted.

**United States District Court**
For the Northern District of California

LEGAL STANDARD

After entry of default, courts may, in their discretion, enter default judgment.  See FED. R. CIV. P. 55; Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding whether to enter default judgment, a court may consider the following factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  When the damages claimed are not readily ascertainable from the pleadings and the record, the court may conduct a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  FED. R. CIV. P. 55(b)(2).  A formal hearing is not required for a court to render a default judgment where the amount claimed is a liquidated sum or capable of mathematical calculation.  Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981).

DISCUSSION

All of the Eitel factors favor entry of default judgment here.  Because plaintiff's motion for default judgment focuses on remedies available under RICO, this court addresses only that claim here.

The RICO statute makes it illegal for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," or to conspire to do so.  18 U.S.C. §§ 1692(c) & (d).  The elements of a civil RICO claim are "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property.'"  Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 361 (9th Cir.

2005) (quoting Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996)).  "Racketeering activity" is any act indictable under one of several provisions of Title 18 of the United States Code, including wire fraud (18 U.S.C. § 1343).  18 U.S.C. § 1961(1)(B).  To establish a pattern, plaintiff must demonstrate that at least two predicate acts "are related, and that they amount to or pose a threat of continued criminal activity."  H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893 (1989).  With respect to predicate crimes based on allegations of fraud, the factual circumstances of the fraud itself must be alleged with particularity, but the state of mind or scienter of the defendant may be alleged generally.  FED. R. CIV. P. 9(b); Odom v. Microsoft Corp., 486 F.3d 541, 553-54 (9th Cir. 2006).  Pleading requirements are to be strictly enforced when default judgment is sought under RICO.  Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988).

Having reviewed the record presented, this court finds that plaintiff has, for default judgment purposes, adequately alleged a claim under RICO and has submitted documentation that tends to support her claim that MTF used U.S. wires to carry out a scheme to defraud her of her money and property.  "[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud."  Odom, 486 F.3d at 554.  The use of the internet qualifies as use of United States wires.  See generally U.S. v. Lee, 296 F.3d 792 (9th Cir. 2002); U.S. v. Pirello, 255 F.3d 728 (9th Cir. 2001).  Here, the record presented to inform this court of the alleged pattern of racketeering activity is in the form of (1) MTF's alleged use of various websites to solicit business; (2) emails between plaintiff and entities and individuals alleged to be part of the scheme; and (3) phone calls alleged to have taken place during the alleged scheme.  Moreover, the allegations of the complaint, which are deemed true, demonstrate that the alleged predicate acts are the means by which defendant regularly conducts its business.  (Complaint ¶¶ 21-25).  See H.J., Inc., 495 U.S. at 242 (stating that "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.").

United States District Court
For the Northern District of California

7

United States District Court

For the Northern District of California

1    RICO defines the term "enterprise" as "any individual, partnership, corporation,

2    association, or other legal entity, and any union or group of individuals associated in fact

3    although not a legal entity."  18 U.S.C. § 1961(4).  This definition is not a demanding one.

4    Odom, 486 F.3d at 548.  "A single 'individual' is an enterprise under RICO.  Similarly, a single

5    'partnership,' a single 'corporation,' a single 'association,' and a single 'other legal entity' are

6    all enterprises."  Id.  Moreover, "an associated-in-fact enterprise under RICO does not require

7    any particular organizational structure, separate or otherwise."  Id. at 551.  Defendant MTF is

8    an enterprise.

9        The sum of money at stake in the action is not insignificant.  Nevertheless, because all

10   liability-related allegations are deemed true, there is no possibility of a dispute as to material

11   facts.  Moreover, MTF never appeared or presented a defense in this matter; and, there is no

12   indication that its default was due to excusable neglect.[1]  While the court prefers to decide

13   matters on the merits, defendant's failure to participate in this litigation makes that impossible.

14   A default judgment is Savage's only recourse.

15       Savage's claimed damages include the $892.50 advance payment she made, as well as

16   $11,790.00 for the loss of all her possessions.  As requested in her complaint, she now seeks a

17   judgment of $36,252.50, which sum represents the advance payments, plus the trebled value of

18   her possessions under RICO.  See 18 U.S.C. § 1964(c) ("Any person injured in his business or

19   property by reason of a violation of section 1962 . . . may sue therefor in any appropriate United

20   States district court and shall recover threefold the damages he sustains").  A plaintiff claiming

21

22        [1]    It appears that plaintiff did not serve MTF with notice of the instant motion
      for entry of judgment.  However, a party in default is not entitled to notice under Fed. R. Civ.
23    P. 55(b)(2) unless it has appeared, formally or informally, and demonstrated a clear intent to
      defend the suit.  FED. R. CIV. P. 55(b)(2) ("If the party against whom a default judgment is
24    sought has appeared personally or by a representative, that party or its representative must be
      served with written notice of the application at least 7 days before the hearing."); In re
25    Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir. 1993) ("While it is true that the failure to
      provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that
26    usually justifies setting aside a default judgment or reversing for the failure to do so, notice is
      only required where the party has made an appearance.") (quotations and citations omitted);
27    Wilson v. Moore & Assocs., Inc., 564 F.2d 366, 368 (9th Cir. 1977) ("No party in default is
      entitled to 55(b)(2) notice unless he has 'appeared' in the action.").  As discussed above,
28    there is no indication in the record that MTF has ever appeared, formally or otherwise, in this
      action.

injury to property must allege a "concrete financial loss." <u>Canyon County v. Syngenta Seeds,</u>
<u>Inc.</u>, 519 F.3d 969, 975 (9th Cir. 2008). This court finds that plaintiff adequately alleges that
defendant's racketeering activity proximately caused the loss of tangible property, i.e., her
money and her belongings. Plaintiff says that the valuation of her household furniture,
appliances, clothes, and other possessions is a "garage sale" estimate of their value.
(Complaint, Ex. 8; Savage Decl. ¶ 6). This court finds plaintiff's estimated value to be
reasonable.

Because all parties have yet to consent to the undersigned's jurisdiction, IT IS
ORDERED THAT this case be reassigned to a District Judge. Further, it is RECOMMENDED
that plaintiff's motion for default judgment be granted, that judgment be entered in plaintiff's
favor against MTF in the amount of $36,252.50.

Plaintiff shall make all reasonable attempts to serve notice of this report and
recommendation on defendant and then file a proof of service with the court. Any party may
serve and file objections to this Report and Recommendation within fourteen days after being
served. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1)(B) & (C).

SO ORDERED.

Dated: March 9, 2012

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

9

1 | 5:10-cv-04216-HRL Notice sent by U.S. mail to:

2 | Janet L. Savage
346 N. 2nd Avenue
3 | Oakdale, CA 95361

4 |       Pro Se Plaintiff

**United States District Court**
For the Northern District of California